DANIEL BLANCO COMAS, Petitioner and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Respondent and Appellee.

No. 6102.   Argued June 7, 1933.—Decided December 1, 1933.

*Diego O. Marrero* and *Alejandro Lamour* for appellant.   *Charles E. Winter, Attorney General,* and *Felipe Janer, Assistant Attorney General,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

A district court, after a trial on the merits, found that petitioner had been illegally deprived of his position as an internal revenue agent but dismissed the action upon the theory that the court could not order a reinstatement, first, because the position was occupied by another appointee who had not been made a party to the action nor heard therein, and, second, because petitioner had been guilty of laches because more than a year had elapsed between the date of the illegal demotion of petitioner and the date of his application for a writ of mandamus.

Petitioner, at the time of his demotion, was, and had been for some years, in the classified civil service. At that time, June 27, 1929, he was stationed in Ponce. In a letter of that date, addressed to petitioner in Ponce, the Treasurer of Puerto Rico said: "Two positions as internal revenue agent having been eliminated from the 1929–30 budget, I have decided to appoint you as Coffee Inspector with a yearly

salary of $1,452.00, as from July 1, 1929.'' Petitioner under-stood that his position was one of those referred to as having been suppressed by the Legislature. For some two months or more he remained under that impression. Other circum-stances, as well as the letter itself and the whole atmosphere of the case, indicate that the writer intended to give that impression. On July 8, petitioner was transferred to San Juan as an assistant inspector of coffee. In a letter dated August 1, the Treasurer informed him that he would be discharged on August 15, because the special fund out of which his salary was being paid had been exhausted. On September 5, he was granted 60 days leave of absence with pay, Sundays and legal holidays excluded. It extended from August 16 to October 26. During this leave of absence he learned that the change in the budget had not affected his former position as internal revenue agent and that another agent for whom no salary was appropriated had been appointed to that position. He then had an interview with the chief of the bureau of internal revenue and was told that he had been out of the service since August 15 notwithstand-ing his leave of absence. Next he went to the Chairman of the Civil Service Commission who advised him to reduce his statement to writing in order that the commission might take formal action thereon. It is fair to add in passing that up to this time defendant herein, now Treasurer of Puerto Rico, had not assumed the duties of his office.

On Novemver 27, petitioner made his complaint in writ-ing to the Civil Service Commission. On December 4th, the Chairman of the Civil Service Commission in reply to peti-tioner's letter of November 27 requested him to call again in order to discuss the subject matter in detail. A letter from the Assistant Treasurer to the Chairman of the Civil Service Commission dated April 9, 1930, shows that the Chairman on December 20, 1929, had written the Treasurer enclosing petitioner's letter of November 27, and in the

meantime had received no reply from the Treasurer. The letter from the Assistant Treasurer reads as follows:

"I have the honor to reply to your letter of December 20, 1929, enclosing letter from Daniel Blanco Comas, a former employee of this Department.

"Mr. Blanco Comas was appointed, November 17, 1926, Internal Revenue Agent at a salary of $1,252 per annum. On May 1, 1927 his salary was increased to $1,452.00.

"In the budget for 1929–30 two of the positions of Internal Revenue Agent, at $1,500 per annum, were eliminated which made it necessary for this Department to reduce its personnel.

"Although Agent Blanco was not filling one of the positions eliminated, he was transferred as of July 1, 1929, to a position of Coffee Inspector at $1,452 in order to make room for an agent filling one of the $1,500 positions eliminated.

"The reason for this seeming discrimination against Blanco was due to repeated complaints from Agent Corretjer to the effect that Blanco's behavior was not proper, he being addicted to excessive drinking.

"Agent Blanco made no objection to this transfer to the position of Coffee Inspector above referred to, which was communicated to him by letter of June 27, 1929, although he now tries to cause the impression that this transfer was wholly unknown to him.

"On August 1, 1929, he was advised that owing to lack of funds, he would cease August 15th.

"Following an interview with the former Treasurer, Blanco was given 60 days vacation from August 16 to October 26, 1929, on which latter date his services were terminated.

"The position of $1,452.00 which Blanco held as Agent was given to Agent Sais who has been in the service for many years and against whom there has never been the slightest complaint.

"The foregoing information has been furnished by the Chief of the Bureau of Excise Taxes, inasmuch as the undersigned has not personal knowledge of the facts in the case, not having had any direct intervention either in the appointment, transfer, or dismissal of this employee."

This was followed immediately by another letter in which the Assistant Treasurer said:

"With reference to my letter of even date relative to Mr. Daniel Blanco Comas, a former employee of this Department, and particu-

larly to the fifth paragraph thereof giving reason why Mr. Blanco was transferred from the position of Internal Revenue Agent to that of Coffee Inspector, I wish to state that I have been informed by the Chief of the Bureau of Excise Taxes that there is no official corre spondence on file in this Department to the effect that Mr. Blanco's behavior was not satisfactory, and that Agent Corretjer's complaints against Blanco were made verbally when visiting headquarters. As Agent Corretjer was in charge of the district of Ponce and had super- vision of the work entrusted to Agent Blanco, his report of the latter's alleged conduct was not questioned.

"I would suggest, in justice to Mr. Blanco, that this letter be made a part of his official record."

On April 22, 1930, the Chairman of the Civil Service Com- mission, pursuant to a resolution adopted by the Commission, notified the Treasurer that the demotion of petitioner on the verbal report of his immediate superior without giving him an opportunity to be heard was a violation of Civil Service Rule number VII and requested his reinstatement. In a letter of even date the Chairman of the Civil Service Com- mission informed petitioner as to the result of the investiga- tion made by the commission and said that the commission would authorize his reinstatement on request of the Treas- urer. In a letter dated May 26, Blanco referred to the com- munication received by him from the Chairman of the Civil Service Commission and to the letter from the chairman of that commission to the Treasurer, called the attention of the Treasurer to the existence of a vacancy and requested that action be taken.

The Treasurer in a letter of May 29, replied that when- ever Blanco's services could be utilized his application would receive careful consideration. On June 2, Blanco again requested that some action be taken. This letter mentioned a previous interview with the Treasurer. In a letter dated June 11, Blanco again referred to the Civil Service Commis- sion's request for his reinstatement, called the attention of the Treasurer to the ambiguity of his letter of May 29, and requested a definite answer. The Treasurer answered June

13 that when the department needed his services he would be notified. This action was commenced December 5, 1930.

The foregoing facts suffice to explain petitioner's delay in the commencement of his action, and the district court erred in refusing relief on the ground of laches. The district court also erred, we think, in holding that petitioner could not be reinstated because the position from which he had been illegally removed had been nominally filled by the appointment of a successor. See 38 C. J. 712, section 300; Id. 707, section 291; 18 R.C.L. 265, section 192.

The judgment appealed from must be reversed and in lieu thereof the judgment of this court directing the reinstatement of petitioner will be entered.